UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| WESTERN RICKY CASEY, ) <br> ) <br> Plaintiff, ) <br> ) <br> V. ) <br> ) <br> NESTLE PREPARED FOODS ) <br> COMPANY, et al., ) <br> ) <br> Defendants. ) | Civil Action No. 5: 13-160-DCR <br><br> **MEMORANDUM OPINION AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Plaintiff Western Ricky Casey's motion to remand. [Record No. 9] Casey argues that the Court lacks subject matter jurisdiction because the amount in controversy does not exceed $75,000.00, exclusive of interest and costs, and because there is not complete diversity between the parties. Defendants Nestle Prepared Foods Company ('Nestle") and Scott Luvin have also filed a motion for reconsideration. [Record No. 5] For the reasons discussed below, both motions will be denied.

**I.**

Casey was previously employed by Nestle at its facility in Mt. Sterling, Kentucky, until he was terminated, on March 13, 2012. [Record No. 1-22, p. 3 ¶9] Casey filed his Complaint against Nestle in the Montgomery Circuit Court on September 12, 2012, alleging that the company violated Kentucky Revised Statute § 342.197 by wrongfully terminating

him in retaliation for his pursuit of two workers' compensation claims. [Record No. 1-2] On March 19, 2013, the state court granted Casey leave to file an Amended Complaint, which added a second claim for common law wrongful discharge. [Record No. 1-13] Both the Complaint and the Amended Complaint stated that the amount sought not exceed $75,000.00. [Record No. 8]

On May 10, 2013, Casey was granted leave to file a Second Amended Complaint, which alleged claims of defamation and libel and slander against Nestle and Luvin, individually and as an employee of Nestle. [Record No. 1-22] The Second Amended Complaint also added a claim for punitive damages. However, the Second Amended Complaint did not contain the limiting language stating that the amount sought does not exceed $75,000.00. Although this language was included in Paragraph 17 of the proposed Second Amended Complaint that Casey filed as an attachment to his Motion to Amend Complaint, it was not included in the final version filed with the Court. [Record No. 1, p. 3 n.3]

Based on the allegations contained in the Second Amended Complaint, the defendants filed a Notice of Removal on May 30, 2013, invoking the Court's diversity jurisdiction under 28 U.S.C. § 1332. Casey seeks remand, arguing that this Court lacks jurisdiction because the amount in controversy is less than $75,000.00, exclusive of interest and costs, and because there is not complete diversity between the parties.

## II.

Title 28 of the United States Code, Section 1332, provides that federal district courts have original jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332(a). The statute "has been interpreted to demand complete diversity, that is, that no party share citizenship with any opposing party." *Caudill v. N. Am. Media Corp.*, 200 F.3d 914, 916 (6th Cir. 2000). For purposes of diversity jurisdiction, citizenship is based on a party's domicile, not his or her residence. *Farmer v. Fisher*, 386 F. App'x 554, 557 (6th Cir. 2010). The two terms are "'not necessarily synonymous'"; a person "'can reside in one place but be domiciled in another.'" *Id.* (quoting *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989)).

Additionally, before a defendant may properly remove a case to federal court based upon diversity jurisdiction, there must be complete diversity of citizenship both at the time that the case is commenced and at the time that the notice of removal is filed. *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999) (citing *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 908 (6th Cir. 1993)); *see also Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991). In interest of comity and federalism, federal jurisdiction should be exercised only when it is clearly established, and any ambiguity regarding scope of removal statute should be resolved in favor of remand to state courts. *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527 (6th Cir. 1999).

Finally, the party seeking to invoke diversity jurisdiction bears the burden of proving that complete diversity existed at the time of removal. *Certain Interested Underwriters v.*

*Layne*, 26 F.3d 39, 41 (6th Cir. 1994). "On a challenge to allegations of jurisdictional facts, that party must support those allegations by competent proof." 15 *Moore's Federal Practice*, § 102.14 (Matthew Bender 3d ed.); *see also United Food Local 919 v. Centermark Props.*, 30 F.3d 298, 301 (2d Cir. 1994).

### III.

#### A. The Amount in Controversy

Casey argues that the Court lacks jurisdiction because the amount in controversy is less than $75,000.00, exclusive of interest and costs. The defendants respond that they have satisfied their burden on this issue because the allegations in the Second Amended Complaint show that the amount in controversy exceeds $75,000.00. When a plaintiff fails to specifically plead an amount he seeks, the removing defendants must show that it is more likely than not that the amount in controversy exceeds the jurisdictional amount, based on the plaintiff's complaint at the time the notice of removal is filed. *Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir. 1990); *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993). To determine the amount in controversy, the Court first looks to the complaint at the time of removal. *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 573 (6th Cir. 2001). The minimum amount in controversy is met if a "fair reading" of the complaint renders it more likely than not that the amount in controversy exceeds the jurisdictional amount. *See id.*

Although the defendants emphasize that the limiting language on damages was omitted from the Second Amended Complaint,[1] the issue presented is whether the asserted claims provide an amount in controversy exceeding $75,000.00. *See Ratliff v. Merck SC Corp.*, 359 F. Supp. 2d 571, 575 (E.D. Ky. 2005). Casey's Second Amended Complaint does not specifically state the amount Casey seeks. However, the allegations and attached filings demonstrate that, more likely than not, the amount in controversy exceeds $75,000.00. For instance, Casey alleges that he is entitled to an award of back pay, front pay, and damages for psychological pain and suffering and his other benefits of employment for his wrongful discharge claims. [Record No. 1-22, p. 4 ¶15] He also seeks punitive damages against each defendant based on his defamation claims. [*Id.*, p. 6 ¶28]

Nestle argues that, based on the plaintiff's hourly wage at the time of termination "and considering his March 2012 termination date, [Casey] could recover, at a minimum, $72,800 in back pay alone[] by the time that this dispute goes to trial." [Record No. 11, p. 6] At the time of his discharge, Casey had an hourly wage of $14.00/hour as a full-time employee working 40 hours per week. Although Casey contests this calculation, the Court notes that a September 2014 trial date is a reasonable assumption. In addition, Casey correctly notes that he is required to mitigate his damages, which could limit his recovery. Moreover, there are potential reductions to an award of back pay, such as "unemployment benefits, other

---

[1] Casey contends that "the second amended complaint that was initially sent with the motion to amend included the same $75,000.00 limitation that was on the first two complaints," however, this language was "inadvertently left out of the draft of the second amended complaint that was actually filed with the Court." [Record No. 8, p. 2]

-5-

work performed, or any [workers compensation] benefits that were paid for lost wages during this time." [Record No. 8, pp. 3-4]

Casey's Second Amended Complaint does not specify an exact amount of damages, presumably because the Kentucky Rules of Civil Procedure prevent a plaintiff from including such an itemization in his Complaint.  *See* Ky. R. Civ. P. 8.01(2)("[T]he prayer for damages in any pleading shall not recite any sum as alleged damages other than an allegation that damages are in excess of any minimum dollar amount necessary to establish jurisdiction of the court.")  Additionally, the defendants note that Casey has requested front pay, compensatory damages for emotional distress, and punitive damages.  *Hayes*, 266 F.3d at 572 (punitive damages should be included in calculating the amount in controversy, unless it is apparent "to a legal certainty" that they cannot be recovered); *see also Klepper v. First Am. Bank*, 916 F.2d 337, 341 (6th Cir. 1990).

Casey's post-removal statements regarding the amount in controversy do not change the allegations of the Second Amended Complaint.  For example, the affidavit attached to the Motion to Remand contends "[t]hat [Casey does] not intent to ask for damages in excess of $75,000."  [Record No. 8-1, p. 1]  However, this statement does not mean that Casey cannot recover an amount in excess of that sum.  *See Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871-72 (6th Cir. 2000) (stating that because the propriety of remand depends on the case at the time of removal, a plaintiff cannot defeat federal jurisdiction by agreeing to seek less than the federal jurisdictional amount after removal).  In addition, a "post-removal stipulation reducing the amount in controversy to below the jurisdictional limit does not

-6-

require remand to state court." *Id.* And the preponderance of the evidence standard applies even if a plaintiff specifically disclaims damages greater than the federal jurisdiction amount if there is some means by which the plaintiff might nevertheless seek and recover damages greater than $75,000.00. *Ratliff,* 359 F. Supp. at 575 (E.D. Ky. 2005). Accordingly, this affidavit is of little consequence when considering the amount in controversy in this case.

Casey also attaches his initial demand letter as evidence that he asked for only $30,000.00 from Nestle to settle his claims. [Record No. 8-2] He contends that, "[i]t is doubtful that [the plaintiff] would authorize a $30,000.00 initial demand if his intention was to seek more than $75,000.00." [Record No. 8, p. 4] However, as the defendants correctly point out, even though a settlement demand is "some evidence" regarding the amount in controversy, courts in this district have rarely been persuaded by a party's demand letter as strong evidence that the amount in controversy meets, or does not meet, the jurisdictional limit.[2] *See Shupe v. Aslundh Corp.*, No. 12-CV-286-KKC, 2013 U.S. Dist. LEXIS 23716, at *6 (E.D. Ky. Feb. 21, 2013) (citing *Smith v. Phillips & Jordan, Inc.*, No. 10-cv-134-ART, 2011 U.S. Dist. LEXIS 7159, at *2 (E.D. Ky. Jan. 24, 2011)); *see also Hollon v. Consumer Plumbing Recovery Ctr.*, 417 F. Supp. 2d 849, 854 (E.D. Ky. 2006) (finding that the amount-

---

[2] There are "two schools of thought with respect to settlement demands" in this context. *Smith,* 2011 U.S. Dist. LEXIS 7159, at *5. The first is that a settlement demand may high-ball the worth of the case, and the second is that the initial demand may be significantly below the total amount placed in controversy "in order to avoid the risks that accompany a trial." *Id.* (quoting *Hollon*, 417 F. Supp. 2d at 854). The initial demand in this case falls clearly into the latter school of thought.

in-controversy requirement was met even where the plaintiff offered to settle the case for $10,000.00).

In the plaintiff's demand letter, Casey specifically states that the amount sought is lower than what would be awarded by a jury, which "[c]ould result in substantial emotional damages being awarded to Mr. Casey." [Record No. 8-2, p. 2] Notably, this letter was sent prior to the filing of the Second Amended Complaint. In the letter, Casey's counsel discusses his belief that the motion to amend will be granted, but at that point, the Complaint had not been amended to include the defamation claims. *Id.* Leave to amend was granted the next day (May 10, 2013). [*See* Record No. 1-22.]

Discussing this yet-to-be filed defamation claim, Casey's counsel states that "[r]ecently, Kentucky juries have held companies responsible for defaming its employees and punished these companies severely for their actions. We believe a Montgomery County jury will do the same." *Id.* He goes on to say that he "believe[s] a jury is likely to award substantial punitive damages in regards to his defamation claim to punish Nestle for its actions and to protect other workers like themselves" and that "[t]hese damages are in addition to the attorney['s] fees and cost of litigation that Nestle will be responsible for when Mr. Casey prevails in this action." *Id.* But "in an effort to avoid the risks, time and expense of further litigation and lengthy appeals," an initial demand of $30,000.00 was extended. *Id.* This letter indicates that Casey was attempting to settle for less than the amount in controversy, even before punitive damages were sought. *See Hollon*, 417 F. Supp. 2d at 854.

The foregoing items lead to the conclusion that the amount in controversy exceeds the jurisdictional requirement of this Court. Nestle has shown, by a preponderance of the evidence, that the amount in controversy, more likely than not, exceeds the jurisdictional minimum of $75,000.00, exclusive of interest and costs.

**B.     Domicile**

Casey also argues that the Court lacks subject matter jurisdiction because Luvin was domiciled in Kentucky at all relevant times, therefore destroying complete diversity of citizenship between the parties. [Record No. 8, p. 4] Nestle is a foreign corporation, incorporated in Pennsylvania with its principal place of business in Ohio. [Record No. 1, p. 4] Casey is a citizen of, and domiciled in, the Commonwealth of Kentucky. [Record No. 1-22]

For purposes of diversity jurisdiction, a person is considered to be a citizen of the state in which he is domiciled; thus, "citizen" and "domicile" are synonymous terms. *See Certain Interested Underwriters v. Layne*, 26 F.3d 39, 41 (6th Cir. 1994). "A person's domicile is the place where the person has his or her true, fixed home and principal establishment, and to which he or she has the intention of returning whenever absent." 15 *Moore's Federal Practice*, § 102.34[2] (Matthew Bender 3d ed.). Domicile generally requires (1) physical presence in a state, and (2) the intent to make the state a home indefinitely. *See, e.g. Stifel v. Hopkins,* 477 F.2d 1116, 1120 (6th Cir. 1973). Where, as here, jurisdiction is asserted by a defendant in a notice of removal, the defendant has the burden of establishing that removal

is proper. *See Jerome-Duncan, Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999) (defendant carries burden of proving propriety of removal).

There is no dispute regarding Luvin's residency because he was physically present in Kentucky at all times relevant to this action. The question, however, is whether Luvin had the intent to make Kentucky his home indefinitely. Courts have interpreted the crucial intent element as requiring a party to possess the intent to indefinitely remain in a state. *See Boston Safe Deposit & Trust Co. v. Morse*, 779 F. Supp. 347, 349 (S.D.N.Y. 1991). Although intent is central to domicile, mere subjective statements of affiliation with a particular state or of intent to make it one's home cannot suffice for state citizenship if those statements are belied by objective indicia of actual residence and intent. *Willis v. Westin Hotel Co.*, 651 F. Supp. 598 (S.D.N.Y. 1986). A person acquires a "domicile of origin" at birth that continues until a "domicile of choice" is acquired. *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989). When determining domicile, courts look to matters such as the payment of taxes, the exercise of political rights, and whether one owns a home in a particular state. *See Mitchell v. United States*, 88 U.S. 350 (1874).

Luvin is a twenty-four year old male who was born in California, but moved to Missouri when he was a child. He states that he grew up in Missouri, and after graduating high school, he attended Miami University in Oxford, Ohio, returning home for two summers to his family home in Missouri. [Record No. 1-24, p. 1] After graduating from college, Luvin attended a sixth-month training program in California, living in temporary corporate housing. [*Id.*, pp. 2-3] He declares that he did not intend to remain in California and, after

-10-

completing the training program in California, he was assigned to an eighteen-month "rotation" at the Nestle facility in Mt. Sterling, Kentucky. [*Id.*]  He lived in Lexington, Kentucky, while he completed the program which was set to end in July 2013.  He asserts that he signed an eighteen-month lease, which ended on July 31, 2013.  [*Id.*]

Luvin maintains that he: (i) has kept his permanent residence and primary mailing address at his parents' home in Missouri; (ii) regularly returns home to Missouri; (iii) maintains a bank account with a Missouri bank, and (iv) was domiciled in Missouri when filing his 2012 taxes.  He further argues that he does not intend – and has never intended – to permanently remain in Kentucky. [Record No. 11, p. 11]  Accordingly, he asserts that he is a citizen of Missouri and that complete diversity of citizenship exists between the parties.

In contrast, Casey argues that Luvin has expressed only a "floating intention" of returning to Missouri and, therefore, is not a citizen of that state. *See Crowley v. Glaze*, 710 F.2d 676, 678 (10th Cir. 1983) ("A 'floating intention' to return to a former domicile does not prevent the acquisition of a new domicile.")  Yet, the defendants have shown by a preponderance of the evidence that Luvin is not domiciled in Kentucky.  Rather, by virtue of his sworn declaration, Luvin has established that he intended to stay in Kentucky for a period of eighteen months while participating in the training program with Nestle.

Further, the presumption of continuing domicile applies to the facts presented.  *See, e.g.,* 15 *Moore's Federal Practice* 102.34[7] (Matthew Bender 3d ed.) ("Once a domicile is established in one state, it is presumed to continue in existence, even if the party leaves that state, until the adoption of a new domicile is established.").  This presumption specifically

-11-

addresses the problem at hand; that is, determining the domicile of an individual who may have abandoned his former domicile but has not arrived at a new one. *Id.* Even if Luvin did not plan to return to Missouri, if he has not exhibited an intent to establish a new domicile, his Missouri domicile continues. *See White v. All Am. Cable & Radio, Inc.*, 642 F. Supp. 69, 72 (D.P.R. 1986).

Whether Luvin intended to change his domicile is a factual question. *Palazzo v. Corio*, 232 F.3d 38, 42 (2d. Cir. 2000). And from the facts at hand, the Court cannot say that Luvin ever intended to change his domicile from Missouri to any other place. There is no evidence regarding Luvin's domicile (*i.e.*, any evidence regarding where he votes, receives mail, or manages his finances) that points to any state other than Missouri. And while Casey calls into question the veracity of Luvin's statements regarding his Kentucky assignment, it is not enough to simply cast doubt on the sworn statements regarding Luvin's lease and term of relocation without some evidence to support those claims. *See Willis*, 651 F. Supp. at 598.

### C. Motion to Reconsider

The defendants have moved the Court to reconsider an order of the Circuit Court of Montgomery County denying Nestle's motion to dismiss the Amended Complaint and to dismiss Casey's public policy claim. [Record No. 5] However, as Casey points out, it is inappropriate for this Court to grant the defendants' motion for reconsideration.

This Court cannot reconsider something it did not consider in the first instance. Nor can a party constructively appeal a state court's decision to this Court. The defendants cite *Louisville/Jefferson Cty. Metro G'vt v. Hotels.com, L.P.*, 590 F.3d 381 (6th Cir. 2009), and

*Options Home Health of N. Fla, Inc. v. Nurses Registry and Home Health Corp.*, No. 5:11-CV-166-JMH, 2013 U.S. Dist. LEXIS 73673, at *2 (E.D. Ky. May 24, 2013) as grounds for the Court's ability to reconsider the Montgomery County Circuit Court's decision. [Record No. 16, p. 2] Both cases are inapplicable because neither contemplates a federal district court "reconsidering" a state court's decision.

## V.

The defendants have adequately demonstrated that Luvin is a citizen of Missouri for purposes of determining diversity jurisdiction. Further, the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. Accordingly, it is hereby

**ORDERED** as follows:

1. The plaintiff's motion to remand [Record No. 9] is **DENIED**.

2. The defendants' motion for reconsideration [Record No. 5] is **DENIED**.

This 1st day of October, 2013.



Signed By:
*Danny C. Reeves* DCR
United States District Judge


*Options Home Health of N. Fla, Inc. v. Nurses Registry and Home Health Corp.*, No. 5:11-CV-166-JMH, 2013 U.S. Dist. LEXIS 73673, at *2 (E.D. Ky. May 24, 2013) as grounds for the Court's ability to reconsider the Montgomery County Circuit Court's decision. [Record No. 16, p. 2] Both cases are inapplicable because neither contemplates a federal district court "reconsidering" a state court's decision.

## V.

The defendants have adequately demonstrated that Luvin is a citizen of Missouri for purposes of determining diversity jurisdiction. Further, the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. Accordingly, it is hereby

**ORDERED** as follows:

1. The plaintiff's motion to remand [Record No. 9] is **DENIED**.

2. The defendants' motion for reconsideration [Record No. 5] is **DENIED**.

This 1st day of October, 2013.



Signed By:
*Danny C. Reeves* DCR
United States District Judge